## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RUSSELL HOLLEY,** *et al.*                                                                  **PLAINTIFFS**

**v.**                                            **Case No. 4:18-cv-00572-KGB**

**BITESQUAD.COM LLC**
**d/b/a BITE SQUAD**                                                                  **DEFENDANT**

## ORDER

Before the Court is defendant Bitesquad.com LLC d/b/a Bite Squad's ("Bite Squad")

motion to compel individual arbitration (Dkt. No. 8).  Plaintiffs responded in opposition, and Bite

Squad replied (Dkt. Nos. 10, 14).  Further, plaintiffs submitted a notice of supplemental authority

to the Court to which Bite Squad responded (Dkt. Nos. 18, 19).  Plaintiffs allege that Bite Squad

violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated §§ 11-

4-201 *et seq.*  Plaintiffs base their allegations upon Bite Squad's use of a "tip credit," a method of

compensation in which an employer pays its employees a base wage below the minimum wage,

which may be permissible so long as the employees' tips ultimately bring their wages up to the

minimum wage.  Plaintiffs claim that Bite Squad violated the law by using a tip-credit system

because it required its drivers to share tips with employees who did not "customarily and regularly

receive tips."  29 U.S.C. § 203(m)(2)(A).  Bite Squad now moves to compel arbitration pursuant

to Arbitration Agreements allegedly signed by plaintiffs.  Plaintiff Russell Holley challenges the

Arbitration Agreement by claiming that the essential element of mutual asset is lacking and that

the Arbitration Agreement therefore is unenforceable.  For the following reasons, the Court grants

Bite Squad's motion to compel individual arbitration and dismisses with prejudice plaintiffs' class

action and collective claims (Dkt. No. 8).

I.      **Background**

In support of its motion to compel arbitration, Bite Squad presents the affidavit of David Schramm, the "Chief Legal and Administrative Officer" of Bite Squad and its wholly-owned subsidiary, KASA Delivery, LLC ("KASA") (Dkt. No. 9-1, ¶ 2).  Mr. Schramm avers that, after a potential employee applies for employment, the employee is "emailed an electronic copy of a hiring packet containing (among other documents) an Employment Application, Employment Agreement, and an Arbitration Agreement, which the employee may complete at a BiteSquad location or on [his or her] own computer." (*Id.*, ¶ 5).  Mr. Schramm further states that "[t]he entire hiring packet is emailed to and accessed by the employee at the same time, and the applicant must review each document in the hiring packet before completing and submitting it." (*Id.*, ¶ 6).

Mr. Schramm states that "[t]he first time an applicant reaches a signature field, they choose to create their signature, which may be made by signing a field with the mouse or pointer; signing the field with their finger; signing the field with a typed signature in the font of their choosing; or uploading a picture of their signature." (*Id.*, ¶ 7).  He also states that applicants "had the option to choose whether they wanted to automatically affix their signature wherever it was required or use the process" just described (*Id.*, ¶ 8).  Furthermore, he states that each applicant "was required to type their name into the Name Fields within the Arbitration Agreement, along with the signature, thereby ensuring the Applicant would be required to review, and enter the applicable information on, the Arbitration Agreement." (*Id.*, ¶ 9).

Mr. Schramm further notes that "[t]he applicant cannot complete and submit the hiring packet without filling out every required field including affixing their name and signature on the Employment Application, Employment Agreement[,] and Arbitration Agreement." (*Id.*, ¶ 11).  Once the packet is completed, "the employee must click a button submitting their packet to

BiteSquad/KASA." (*Id.*, ¶ 10).   At that point, "[a] BiteSquad/KASA representative would then review the employee's submission and sign the documents on behalf of BiteSquad/KASA." (*Id.*, ¶ 12).   According to Mr. Schramm, "[a]n Audit Trail records the email address to which the employment packet is sent and the times at which it is sent, viewed[,] and signed by the employee . . . ." (*Id.*).

Mr. Schramm avers that it is Bite Squad's regular practice "to maintain the Employment Application, Employment Agreement, Arbitration Agreement, and Audit Trail as part of every employee's file." (*Id.*, ¶ 13).   Attached to Mr. Schramm's affidavits are copies of the Employment Application, Employment Agreement, Arbitration Agreement, and Audit Trail for each of the individual plaintiffs (Dkt. No. 9-1, at 6-55).

The Arbitration Agreements each contain one line for the date, two lines for the typed name of the applicant, and one line for the signature of the applicant (*Id.*, at 10, 14, 20, 24, 30, 34, 40, 44, 50, 54).   The individual plaintiffs' names and signatures are filled in on each of these lines (*Id.*).   Each Arbitration Agreement contains the following relevant language:

> Except as this Agreement otherwise provides, claims covered by this Agreement (sometimes referred to jointly and separately as "Claims") include, but are not limited to, legal disputes with any individual or entity regarding . . . wages or other compensation due, minimum wage, . . . and . . . claims arising under . . . [the] Fair Labor Standards Act, . . . [and] state statutes or regulations addressing the same or similar subject matters."

(*Id.*, at 10, 20, 30, 40, 50).

The Arbitration Agreements also state that:

> Both the Company and you agree to bring any dispute in arbitration on an individual bases only, and not on a class or collective basis on behalf of others.
>
> . . .

> Notwithstanding any other provision of this Agreement or the AAA Rules . . . , disputes regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

(*Id.*, at 11, 21, 31, 41, 51).  Each Arbitration Agreement also states that arbitrations pursuant to the Arbitration Agreements "shall be conducted in accordance with the procedures set forth in the American Arbitration Associations' Employment Arbitration Rules ("AAA Rules") . . . ." (*Id.*, at 12, 22, 32, 42, 52).  The Arbitration Agreements also allow applicants "to opt out and not be subject to" the Arbitration Agreements (*Id.*, at 13, 23, 33, 43, 53).

At the conclusion of the Arbitration Agreements, immediately preceding the signature and typed applicant name, appears this language in capital letters and bold type:

> **EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES CAREFULLY READING THIS AGREEMENT, UNDERSTANDING ITS TERMS, AND ENTERING INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.**

(*Id.*, at 13, 23, 33, 43, 53).

Also attached to Mr. Schramm's affidavit are "Audit Trails" for each of the individual plaintiffs (*Id.*, at 15, 25, 35, 45, 55).  Each of the Audit Trails indicates when the "Hiring Packet" was sent to the individual plaintiffs, when the individual plaintiffs "viewed" and "signed" the document, and when a Bite Squad representative "viewed" and "signed" the document (*Id*).  Each of the Audit Trails indicates that the individual plaintiffs viewed and signed the documents that were sent to them (*Id.*).

In response, plaintiffs submit the declaration of individual plaintiff Russell Holley (Dkt. No. 10-1).  In his declaration, although he admits to having been presented with and having seen the Employment Application and the Employment Agreement, Mr. Holley states that Bite Squad "did not present [him] with the 'Arbitration Agreement'" that is attached to Mr. Schramm's

affidavit (*Id.*, ¶¶ 4-10).   He also states that he did not sign the Arbitration Agreement and that "the printed cursive name appearing on [the Arbitration Agreement] is clearly a computer reproduction in cursive of [his] name that was typed on the 'Employment Application' labeled Exhibit A-1." (*Id.*, ¶ 12).   Mr. Holley also states that the Audit Trail "only shows that [he] typed [his] name on the 'application (5).pdf' document, meaning the Employment Application in Exhibit A-1." (*Id.*, ¶ 13).   Mr. Holley further states that "the Audit Trail further proves that there was only one document presented to [him] as the Audit Trail itself reads that 'this document was signed on bitesquad.com.'" (*Id.*, ¶ 14).   Mr. Holley asserts that the Audit Trail "does not show that there were multiple documents presented to [him]." (*Id.*).   Instead, according to Mr. Holley, "there was only one form document presented to [him], the Employment Application/Employment Agreement." (*Id.*, ¶ 15).   He states that the Audit Trail "confirm[s] that the Arbitration Agreement was not sent to [him]." (*Id.*, ¶ 16).

Mr. Holley asserts that his "name was clearly electronically reproduced to an arbitration agreement [he] did not see nor could be bound to." (*Id.*, ¶ 17).   He further states that he did "not agree to arbitrate claims, nor was there any other time in [his] employment where [his] continued employment hinged on [him] agreeing to some arbitration agreement." (*Id.*, ¶ 22).   He also argues that Bite Squad "has no proof" that he "signed the field with a typed signature," and he asserts that he "did not use any automatic feature for affixing [his] signature on these documents or at any other time." (*Id.*, ¶¶ 23, 24).   According to Mr. Holley, "[t]he only explanation for the printed signature on the Arbitration Agreement is that Defendant put it there without [his] consent or knowledge." (*Id.*, ¶ 25).

## II.    Legal Standard

The Federal Arbitration Act provides that certain arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Courts must therefore "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation omitted).  "[T]he first task of a court asked to compel arbitration . . . is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  "Arbitration is a matter of contract law, and favored status notwithstanding, parties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

The Court must first determine whether there is a valid arbitration agreement and then determine whether the claims fall within the terms of the arbitration agreement. *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016).  "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (citing *Howsam*, 537 U.S. at 84-85).  Threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator. *Id..* at 1100 (citing *Howsam*, 537 U.S. at 83).  However, even where the parties incorporate "a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court," *Fallo v High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009), such as by incorporating the AAA Rules into their agreement, the Eighth Circuit Court of Appeals has explained that determining whether an arbitration

agreement itself is valid is a threshold matter for the court, *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 740-41 n.2 (8th Cir. 2014).  *See also Schwalm v. TCF Nat'l Bank*, 226 F. Supp. 3d 937, 940 (D.S.D. 2016) (stating that "[w]hether or not parties entered into an arbitration agreement falls to judicial determination" (citing *Neb. Mach. Co.*, 762 F.3d at 741-42)).

The motion to compel arbitration is reviewed under a standard akin to the summary judgment standard.  *See Neb. Machinery Co.*, 762 F.3d at 741-42.  However, if a material fact dispute is raised that concerns the "making of the arbitration agreement . . . the court shall proceed summarily to trial thereof," and the court resolves the fact issue when no jury trial is requested. *Nebraska Machinery Co.*, 762 F.3d at 743 (quoting 9 U.S.C. § 4); *see also Burnip v. Credit Acceptance Corp.*, No. 0:18-CV-01839-JRT-KMM, 2019 WL 2029555, at *4 (D. Minn. Jan. 15, 2019), *report and recommendation adopted*, No. CV 18-1839 (JRT/KMM), 2019 WL 1110801 (D. Minn. Mar. 11, 2019).

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to

establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.    Discussion

The Court will examine each plaintiff's claims in turn.

### A.    Ms. Cook, Mr. Lucas, Mr. Brown, and Ms. Hammons's Individual Claims

Defendants argue that the Arbitration Agreements delegate the threshold issue of arbitrability to an arbitrator, not to this Court (Dkt. No. 9, at 9-10). The Eighth Circuit Court of Appeals has held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication that the parties intended for the arbitrator to decide threshold questions of arbitrability. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (noting the AAA Rules empower the arbitrator to determine his or her own jurisdiction over a controversy between the parties).

Defendants have presented the affidavit of Mr. Schramm, who swears to the authenticity of the Arbitration Agreements signed by the individual plaintiffs (Dkt. No. 9-1, ¶¶ 14-20). Defendants have also presented copies of the Arbitration Agreements signed by each of the individual plaintiffs (*Id.*, at 20-24, 30-34, 40-44, 50-54). The Arbitration Agreements each bear the signatures of the individual plaintiffs (*Id.*, at 24, 34, 44, 54). Each of these arbitration agreements state that "[a]rbitrations pursuant to this Agreement shall be conducted in accordance with the procedures set forth in the American Arbitration Association's Employment Arbitration Rules . . . ." (*Id.*, at 22, 32, 42, 52). While Mr. Holley has presented an affidavit asserting that he

did not sign the Arbitration Agreement, there is no evidence before the Court that the other individual plaintiffs disavow the Arbitration Agreements that bear their signatures.

Taking the record evidence in the light most favorable to plaintiffs, the Court concludes that no reasonable juror could conclude that Ms. Cook, Mr. Lucas, Mr. Brown, and Ms. Hammons are not bound to the Arbitration Agreements.  As the Arbitration Agreements incorporate the AAA Rules, the Court concludes that the arbitrator must determine his or her own jurisdiction over the controversy between Ms. Cook, Mr. Lucas, Mr. Brown, Ms. Hammons, and Bite Squad. Accordingly, the Court stays the individual claims brought by Ms. Cook, Mr. Lucas, Mr. Brown, and Ms. Hammons and refers those claims to an arbitrator for the arbitrator to determine whether those claims are arbitrable.

### B.    Mr. Holley's Individual Claims

Bite Squad also asserts that an arbitrator should determine whether Mr. Holley's claims are arbitrable.  Mr. Holley argues that he is not bound by the Arbitration Agreement because his signature was forged and because the "auto-fill" feature is insufficient to create a binding contract (Dkt. No. 10, at 3-7).  The Court acknowledges that the Arbitration Agreement incorporates the AAA Rules.  The Court could locate no Eighth Circuit case directly on point regarding whether an allegation of forgery that one party claims invalidates the arbitration agreement in its entirety is a matter of arbitrability to be decided by the arbitrator. However, Supreme Court and Eighth Circuit precedent suggests that this question belongs to the Court as the allegation of forgery goes to the issue of whether the parties actually agreed to arbitration  *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (finding courts the appropriate arbiters when "a party specifically challenges the validity of the agreement to arbitrate"); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines

whether a valid arbitration agreement exists."); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement. . . .") *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1031 (8th Cir. 2019) (reversing the district court's order compelling arbitration because the Defendant "lacked the capacity to sign the contract" which created the underlying arbitration agreement); *Express Scripts, Inc. v. Aegon Direct Mktg. Servs.*, 516 F.3d 695, 701 (8th Cir. 2008) ("A dispute like the one here—over whether the parties agreed to arbitrate—will be resolved by the district court unless the parties clearly and unmistakably provide otherwise.") (internal quotations omitted); *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998), *cert denied*, 525 U.S. 1068 (1999) ("Express and Barker assert claims that go to the making of the arbitration agreement itself. Under *Prima Paint*, a court must decide whether the agreement to arbitrate is valid."); *I.S. Joseph Co., Inc. v. Mich. Sugar Co.*, 803 F.2d 396, 399-400 (8th Cir. 1986) ("If there is in fact a dispute as to whether an agreement to arbitrate exists, then that issue must first be determined by the court as a prerequisite to the arbitrator's taking jurisdiction. . . . Case law supports our holding that the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other."); *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 729 (8th Cir. 1976) (describing the question of whether a party had the authority to enter an arbitration agreement on the defendant's behalf as "a question for decision by the courts, because it goes expressly to the making of the agreement to arbitrate").  Indeed, at least one district court in Arkansas has taken this exact approach.  *See Carter v. Affiliated Comput. Sys., Inc.*, No. 6:10-cv-06074, 2010 WL 5572078 (W.D. Ark. Dec. 15, 2010), *report and recommendation adopted sub nom. Carter v. Affiliated Comput. Servs.*, No. 10-6074, 2011 WL 96494 (W.D. Ark. Jan. 11, 2011).

Furthermore, the Eighth Circuit Court of Appeals in *Nebraska Machinery Company* confronted a similar although not identical argument.  In *Nebraska Machinery*, defendant Cargotec argued that an arbitrator, not the court, should determine the issue of arbitrability.  762 F.3d at 740. The Eighth Circuit determined that such an argument "puts the cart before the horse, as it presumes the arbitration provision formed part of the contract at issue" and determined that the court instead should resolve the "threshold question" of "whether the arbitration agreement itself is valid."  *Id.* at 741 n.2.  Other district courts in the Eighth Circuit have followed this approach to resolve an issue raised with respect to an electronic signature on an employment arbitration agreement. *Burnip*, 2019 WL 2029555, at *4-5; *Schwalm*, 226 F.Supp.3d at 941-42.

Here, at a minimum, this Court is required to resolve as a threshold issue whether Mr. Holley entered into the Arbitration Agreement to determine whether Mr. Holley, along with the other individual plaintiffs, waived his ability to bring class and collective actions against Bite Squad.  Even Bite Squad argues that language in the Arbitration Agreement vests the construction and enforcement of the class action waiver language in the Court, not an arbitrator (Dkt. No. 9, at 14-15).  As a result, this Court will determine whether a valid arbitration agreement exists as to Mr. Holley.  For the reasons explained elsewhere in this Order, the Court concludes that it does.

The Court also concludes that, based upon the record evidence before it, the Arbitration Agreement signed by Mr. Holley empowers the arbitrator to decide which claims are arbitrable. The Arbitration Agreement bearing Mr. Holley's signature states that "[a]rbitrations pursuant to this Agreement shall be conducted in accordance with the procedures set forth in the American Arbitration Association's Employment Arbitration Rules . . . ." (Dkt. No. 9-1, at 12).  As already discussed, the Eighth Circuit has ruled that incorporating the AAA Rules into an arbitration agreement is a clear and unmistakable indication that the parties intended for the arbitrator to

decide threshold questions of arbitrability. *Fallo*, 559 F.3d at 878 (stating that "the arbitration provision's incorporation of the AAA rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator"). Given that the Arbitration Agreement bearing Mr. Holley's signature incorporates the AAA Rules, the Court finds that there is no genuine issue of material fact in dispute as to the parties' intent to have the arbitrator decide the threshold issue of arbitrability. Accordingly, the Court stays the individual claims brought by Mr. Holley and refers those claims to an arbitrator to determine whether such claims are arbitrable.

### C.    Class and Collective Claims

Bite Squad argues that that the class and collective actions brought by plaintiffs are barred by the Arbitration Agreements. Bite Squad points out that the Arbitration Agreements signed by each of the individual plaintiffs include the following class action waiver language:

> Both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a member in any such class or collective proceeding.

(Dkt. No. 9-1, at 11, 21, 31, 41, 51). Furthermore, Bite Squad argues that the following language vests the construction and enforcement of the class action waiver language in the Court, not an arbitrator:

> Notwithstanding any other provision of this Agreement or the AAA Rules . . . , disputes regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

(*Id*.).

The Court determines that it is required to resolve as a threshold issue whether Mr. Holley entered into the Arbitration Agreement to determine whether Mr. Holley, along with the other individual plaintiffs, waived his ability to bring class and collective actions against Bite Squad.

### 1.      Forgery

Whether an arbitration agreement is valid is a matter of state contract law. *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). As Arkansas is the forum state (Dkt. No. 1, ¶ 12), the Court applies Arkansas contract law to determine the issue of validity of the Arbitration Agreement. "Arkansas lists five contractual elements for a valid arbitration agreement: '(1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations.'" *Northport Health Servs. of Ark, LLC v. Posey*, 930 F.3d 1027, 103 (8th Cir. 2019) (quoting *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004)). With regard to mutuality of agreement, the Arkansas Supreme Court has consistently applied two legal principles: (1) if there is no meeting of the minds, there is no contract; and (2) in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Williamson v. Sanofi Winthrop Pharm. Inc.*, 60 S.W.3d 428, 434 (Ark. 2001). While the standard for determining mutuality is an objective one, "[a] party's manifestation of assent to a contract may be made wholly by spoken words or by conduct." *Childs v. Adams*, 909 S.W.2d 641, 645 (Ark. 1995) (citing *ERC Mortg. Grp., Inc. v. Luper*, 795 S.W.2d 362 (1990))).

Mr. Holley argues that he never agreed to arbitrate any claims against Bite Squad. The Court concludes that Mr. Holley has failed to create a disputed genuine issue of material fact as to the validity of the Arbitration Agreement bearing his signature. The undisputed record evidence shows that Mr. Holley's forgery argument cannot survive summary judgment. Under Arkansas law, the party asserting forgery of a signature carries the burden of proof to establish the falsity of

the signature. *See Fuller v. Norwood*, 592 S.W.2d 452, 454 (Ct. App. Ark. 1979) (citing *Kennedy v. Couillard*, 372 S.W.2d 825 (Ark. 1963)).

The undisputed record evidence indicates that Mr. Holley signed the Employment Application, the Employment Agreement, and the Arbitration Agreement (Dkt. No. 9-1, at 6-14). The undisputed record evidence also indicates that the Arbitration Agreement contains a line for a date, two lines for printed versions of Mr. Holley's full name, and a line for Mr. Holley's signature (*Id.*, at 10, 14). Mr. Holley's name is printed on the two lines provided for a printed name on the Arbitration Agreement, and his signature is located on the signature line of the Arbitration Agreement (*Id.*).

The undisputed record evidence also contains an "Audit Trail" for Mr. Holley (*Id.*, at 15). The Audit Trail has a title line of "Your Hiring Packet," a file name line that says "application (5).pdf, I-9 Jan 2017.pdf and 12 others," and a status line that says "Completed." (*Id.*, at 15). The Audit Trail also includes the following statements: "This document was signed on bitesquad.com;" "Document History;" and "The document has been completed." (*Id.*). The Audit Trail contains a "Document ID" number of "0704b4bbda7fa76f23e 31174460b75ffad9be0c1," which is also at the bottom of the Employment Application, Employment Agreement, and Arbitration Agreement (*Id.*, at 6-15). Finally, the Audit Trail indicates that Mr. Holley viewed and signed unspecified documents (*Id.*, at 15).

The only evidence offered to show that Mr. Holley's signature was forged is the affidavit of Mr. Holley (Dkt. No. 10-1). In this affidavit, Mr. Holley asserts that he "never signed nor agreed to arbitrate any claims with Bitesquad." (*Id.*, ¶ 3). Mr. Holley asserts that "there was only one form document presented to [him], the Employment Application/Employment Agreement." (*Id.*, ¶ 15). He contends that "the printed cursive name appearing on [the Arbitration Agreement] is

clearly a computer reproduction in cursive of [his] name that was typed on the 'Employment application' labeled as Exhibit A-1." (Id., ¶ 12).  He also states that he "did not choose to automatically affix [his] signature to any documents at any point." (*Id*., ¶ 24).  Mr. Holley further states that he did not place his "printed signature on the Arbitration Agreement . . . ." (*Id*., ¶ 25).  Mr. Holley argues that the file name on the Audit Trail, "application (5).pdf," demonstrates that he only typed his name on the Employment Application (*Id*., ¶ 13).

This case is similar to *Curtis v. Contractor Management Services, LLC*, No. 1:15-cv-487-NT, 2018 WL 6071999 (D. Me. Nov. 20, 2018).  There, as relevant, the two plaintiffs asserted overtime claims against defendant 3PL, and 3PL moved to compel arbitration on the grounds that the plaintiffs "accessed, reviewed, and signed" the arbitration agreement using an "online platform." 2018 WL 6071999, at *2.  The plaintiffs averred that they did "not recall" signing the arbitration agreement and implied "that the signatures on the 3PL Agreement are electronic forgeries." *Id*., at *4.  3PL responded by providing the declaration of an employee who managed the online platform through which the arbitration agreement was allegedly signed.  *Id*., at *5.  That employee averred that a user must first register for the platform by submitting a name, date of birth, and social security number, and then the user must create a "unique electronic signature" by answering "three of four security questions related to her personal history." *Id*.  The employee asserted, and the record evidence provided corroborated, that the plaintiffs completed the "identity verification process, created a unique electronic signature, and later reviewed and electronically signed the 3PL Agreement." *Id*.  The district court applying New York law to assess the formation of a contract found that "[t]his evidence overcomes the Plaintiffs' unsupported implication that 3PL forged the Plaintiffs' signatures." *Id*.

In the Court's view, no reasonable factfinder could conclude that Bite Squad, or any other entity or individual, forged Mr. Holley's signature on the Arbitration Agreement.  Mr. Schramm avers that each potential employee is "emailed an electronic copy of a hiring packet containing (among other documents) an Employment Application, Employment Agreement, and an Arbitration Agreement . . . ." (Dkt. No. 9-1, ¶ 5).  The record evidence establishes that the "entire hiring packet is emailed to and accessed by the employee at the same time, and the applicant must review each document in the hiring packet before completing and submitting it" (*Id*., ¶ 6).  The applicant must generate an electronic signature and choose whether to affix that signature automatically on all documents (*Id*., ¶¶ 7-8).  The applicant must also type his or her name into the "Name Fields" on the Arbitration Agreement (*Id.*, ¶ 9).  Mr. Schramm avers that an applicant cannot complete and submit the entire hiring packet "without filling out every required field," including affixing his or her name and signature on each line where required (*Id*., ¶ 11).

The file name on the Audit Trail—"application (5).pdf, I-9 2017.pdf *and 12 others*"— indicates that Mr. Holley was sent 14 files (Dkt. No. 9-1, at 15 (emphasis added)).  The "Document ID" on the Audit Trail is "0704b4bbda7fa76f23e31174460b75ffad9be0c1," which matches the "Doc ID" on the bottom right-hand corner of each page of the Arbitration Agreement bearing Mr. Holley's signature (*Id*., at 10-14).  The Audit Trail also shows that Mr. Holley "signed" the document on August 15, 2017 (*Id*., at 15).  This date matches the date on the Arbitration Agreement, as well as the dates on the Employment Application and Employment Agreement, both of which Mr. Holley admits to signing (*see id*., at 6-15).

"There is no question that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (internal quotation

omitted). "However, a properly supported motion for summary judgment is not defeated by self-serving affidavits." *Id.* (citing *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)). The undisputed record evidence shows that Mr. Holley was emailed a copy of the hiring packet, and he admits that he signed the Employment Application and Employment Agreement (Dkt. No. 10-1, ¶¶ 4-9, 12-13, 15). Furthermore, the undisputed record evidence is that, to complete the entire hiring packet, Mr. Holley was required to complete every required field on all of the documents, including the Arbitration Agreement (Dkt. No. 9-1, ¶ 11.). Additionally, the date on the Employment Application and Employment Agreement match the date on the Arbitration Agreement (*Id.* at 6-7, 9-10,). Further, the "Doc ID" from the Audit Trail matches the bottom right-hand corner of each page of the hiring packet, including the pages of the Arbitration Agreement (*Id.* at 6-15). The undisputed record evidence also shows that, for a job applicant to complete the hiring packet, the applicant had to: (1) review each document in the hiring packet before completing and signing each document; (2) fill out each required field, including name and signature fields; and (3) click a button submitting the packet to Bite Squad (Dkt. No. 9-1, ¶¶ 6, 9-11). It is Mr. Holley's burden to establish the falsity of the signature under Arkansas law, and even with all reasonable inferences drawn in his favor, the Court concludes that Mr. Holley's unsupported assertion that Bite Squad forged his signature on the Arbitration Agreement does not suffice to call into question the authenticity of his signature under Arkansas law.

### 2.      Validity Of Signature

Mr. Holley also argues that Bite Squad has failed to demonstrate that the "auto-fill" feature is "sufficient to establish a meeting of the minds between the parties." (Dkt. No. 10, at 4 (internal quotation marks omitted)). The Court disagrees and concludes that the undisputed record

evidence, even taken in the light most favorable to Mr. Holley, demonstrates that Mr. Holley's electronic signature on the Arbitration Agreement is legally binding.

Arkansas law recognizes the validity and legal effect of electronic signatures as follows:

(a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.  (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.  (c) If a law requires a record to be in writing, an electronic record satisfies the law.  (d) If a law requires a signature, an electronic signature satisfies the law.

Ark. Code Ann. § 25-32-107.  Arkansas defines an "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."  Ark. Code Ann. § 25-32-102(8).  Other courts have held that an individual who "clicked a box indicating that [they] read and acknowledged the agreement" has provided a valid signature for contract purposes under Arkansas law.  *Johnson v. Pizza Hut*, No. 1:16-cv-1089, 2017 WL 1064666, at *2 (W.D. Ark. Mar. 21, 2017).

The undisputed record evidence shows Bite Squad emails an "entire hiring packet" to an applicant, and "the applicant must review each document in the hiring packet before completing and submitting it." (*Id.*, at 9-1, ¶ 6).  The record evidence further indicates that, when an applicant reaches a "signature field," the applicant must decide the manner in which he or she will provide a signature (*Id.*, ¶ 7).  The undisputed record evidence shows that applicants have "the option to choose whether they wanted to automatically affix their signature wherever it was required . . . ." (*Id.*, ¶ 8).  Furthermore, the undisputed record evidence is that applicants are "required to type their name[s] into the Name Fields within the Arbitration Agreement, *along with the signature* . . . ." (*Id.*, ¶ 9 (emphasis added)).  Once the "entire employment packet" is completed and signatures placed "where required," applicants "must click a button submitting their packet . . . ." (*Id.*, ¶ 10).  According to Mr. Schramm, "[t]he applicant cannot complete and submit the hiring packet without

18

filling out every required field including affixing their name and signature on the . . . Arbitration Agreement." (*Id.*, ¶ 11).

The Court notes that "clickwrap agreements"[1] are routinely held to be valid and enforceable. *See e.g.*, *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1255 (10th Cir. 2012); *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir. 2007); *Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*, No. 12-CV-6125, 2014 WL 3672128, at *3 (W.D. Ark. July 23, 2014). The undisputed record evidence is that applicants for employment with Bite Squad have to make the affirmative choice "to automatically affix their signature" wherever it is required. (Dkt. No. 9-1, ¶ 8). Further, even if Mr. Holley chose to affix automatically his signature, the undisputed record evidence shows that he had to affix his printed name manually at least twice on the Arbitration Agreement (*Id.* at 2, ¶ 9; 10, 14). Additionally, Mr. Holley could not submit his entire hiring packet, including but not limited to the Arbitration Agreement, until he had affixed his signature on each required line and affixed his printed name on the required lines (*Id.*, ¶ 11). The Audit Trail, as already discussed, indicates that Mr. Holley reviewed and signed the hiring packet (*Id.*, at 15). Mr. Holley's only evidence to the contrary is his affidavit, wherein he states that he "did not choose to automatically affix my signature to any documents at any point." (Dkt. No. 10-1, ¶ 24).

The Court notes that the facts of this case are distinct from those in *Shockley*, where the Eighth Circuit held that plaintiff Jennifer Shockley was not bound by an arbitration agreement because there was no proof that she accepted the terms of that agreement. 929 F.3d at 1019-20.

---

[1] A clickwrap agreement is an assent process where a user is required to click "I agree" before completing a purchase but is not required to actually view or scroll through the contract or terms and conditions. *See Witt v. Nation-Wide Horse Transp., Inc.*, No. 4:16-CV-108, 2016 WL 4033987, at *6 (S.D. Iowa July 25, 2016) (citing *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395 (E.D.N.Y. 2015)).

There, the arbitration language at issue was contained in an employee handbook, and Ms. Shockley was offered two opportunities to review the handbook, though neither review was "conditioned on her offer of employment." *Id*. at 1019. Ms. Shockley acknowledged the existence of the relevant arbitration provisions, but there was no proof that she actually accepted those provisions so as to form a binding contract under Missouri law. *Id*. Here, however, Mr. Holley was required to affix his signature to the Arbitration Agreement in order to be hired by Bite Squad. Furthermore, the record evidence is that Mr. Holley did sign the Employment Agreement and Employment Application, both of which were contained in the hiring packet with the Arbitration Agreement, and that Mr. Holley accessed the entire hiring packet at the same time. Moreover, the language of the Arbitration Agreement makes clear that it is an agreement between the parties, entered into voluntarily, and binding as to its terms.

As discussed above, a properly supported motion for summary judgment cannot be defeated by self-serving affidavits. *Conolly*, 457 F.3d at 876 (citing *Davidson & Assocs.*, 422 F.3d at 638). Mr. Holley's bare allegation is not enough to create a genuine disputed issue of material fact as to whether he affixed his electronic signature to the Arbitration Agreement. The documents attached to Mr. Schramm's affidavit indicate that Mr. Holley affixed his signature and name to the Employment Application, Employment Agreement, and Arbitration Agreement (Dkt. No. 9-1, at 6-14). The Audit Trail, which bears the same "Doc ID" as each page of the Arbitration Agreement related to Mr. Holley, indicates that Mr. Holley reviewed and signed the hiring packet (*Id*., at 15). Additionally, the undisputed record evidence shows that Mr. Holley could not complete the hiring packet without completing all of the documents, including the Arbitration Agreement. Mr. Holley does not dispute that he signed the Employment Application and Employment Agreement, both of which were also within his hiring packet and have the same date as the Arbitration Agreement.

The Court concludes that, based upon this record evidence, any reasonable juror would conclude that, as a matter of Arkansas law, Mr. Holley electronically signed the Arbitration Agreement. Accordingly, the Court concludes that Mr. Holley has failed to create a disputed genuine issue of material fact as to the validity of the Arbitration Agreement.  Based upon the record evidence, the Court concludes that the Arbitration Agreement is enforceable as to each individual plaintiff and that there is no genuine issue of material fact as to the parties' intent to waive certain class or collective actions.

The Eighth Circuit has held that "arbitration agreements containing class waivers are enforceable in claims brought under the FLSA."  *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013).  The Supreme Court has upheld the validity of class-action waivers in arbitration agreements.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (holding that the that the Federal Arbitration Act's saving clause does not provide a basis for refusing to enforce arbitration agreements waiving collective action procedures for claims under the FLSA and class action procedures for claims under state law).  For the reasons discussed above, the Court concludes that the Arbitration Agreements signed by plaintiffs are valid and binding.  The Court therefore finds that the waiver of class or collective actions in the Arbitration Agreements are valid.  Accordingly, the Court dismisses the first and third counts of the complaint with prejudice (Dkt. No. 1).

## IV.     Conclusion

For the foregoing reasons, the court stays the individual claims of all plaintiffs and grants the motion to compel arbitration (Dkt. No. 8).  The class and collective action claims brought by these plaintiffs are dismissed with prejudice.

So ordered this the 19th day of September 2019.

Kristine G. Baker
United States District Judge